AMELIA L. GILMORE et al.

*v.*

GEORGE F. TUTTLE, trustee, et al.

The rate of interest to be computed on the accounting of a delinquent trustee, stated, where the rate had been changed by law during the period covered by the account; and also the proper method of calculating such interest where the trustee's disbursements had not been regularly credited to him; also other items of the account, as to the valuation of certain lands involved in his misfeasance, and the time from which he was chargeable with interest under the will, explained and settled.

Bill for relief. On exceptions by trustee to master's report.

*Mr. J. W. Taylor,* for the exceptions.

*Mr. R. Wayne Parker, contra.*

THE CHANCELLOR.

By the order made in this cause, May 29th, 1880, it was referred to the master to take and state the accounts of the trustee, and it was ordered that in the accounts he ascertain and charge the trusts with the value of the lands sold and conveyed

by him to Amelia B. Gilmore in 1872, and interest thereon, and also ascertain to what time the complainant Amelia L. Gilmore, has received from the trust the interest and allowance for support of children, and also whether it is advisable to sell any lands still held by the trustee, and if so, in what manner the sale should be made. The master has reported. To his report the trustee files exceptions, six in number. The first relates to the rate of interest with which the master has charged him in the account, it being seven per cent. per annum throughout. The trustee is chargeable with interest at the legal rate for the time being. Where an account extends over a number of years, and the rate of interest has during that time been changed by law, the rate of interest charged in the account should conform to the fluctuations in the rate. *Wilson* v. *Cobb, 4 Stew. Eq. 91; Matter of Marcy's Account, 9 C. E. Gr. 451.* On the 4th of July, 1878, the legal rate of interest was changed from seven to six per cent. per annum, and has so remained ever since. The exception under consideration, therefore, will be allowed.

The second exception is on the ground that the master, in taking and stating the account, has neglected to credit and allow the trustee some of the payments made by him, and eleven payments are specified as having been omitted from the account. An examination of the account shows that they are all duly credited. Objection is also made in the brief of the trustee's counsel that payments to the amount of $1,291.62, contained in the account of the trustee at the beginning thereof, are not allowed. This objection, too, is well taken. The payments are balanced by an exactly equal amount of receipts, and neither the one nor the other enters into the final footings. The master, in crediting the trustee with the payments made by him, has taken the amount of the final footing as being the amount of them according to the trustee's account, whereas the $1,291.62 must be added to the final footing, to ascertain the amount of the trustee's payments, according to his own accounts.

The third and fifth exceptions are that the master, in the computation of interest, has not made proper allowance of interest to the trustee on his payments, and has charged him with too much

interest on his receipts. The method of making up the account adopted by the master is incorrect. To ascertain the amount of money for which the trustee is answerable, he debits the trustee with the amount with which he finds him justly chargeable as the proceeds of the sale of land to Mrs. A. B. Gilmore, made in May, 1871, deducts from it the cost of the homestead bought for Mrs. A. L. Gilmore, and the amount of a mortgage received as part of the consideration of that sale. On the balance he charges interest to the date of the master's account, and then charges the trustee with the proceeds of the other subsequent sales to Mrs. A. B. Gilmore, with interest thereon from the date thereof to the time of making up that account, and on the result of these charges he credits the trustee with only the amount of the excess of his payments over his receipts, according to the trustee's account, which, it should be stated, does not include the proceeds of the last-mentioned sales to Mrs. Amelia B. Gilmore. The trustee is thus charged with interest on all he received, except the cost of the homestead and the before-mentioned mortgage, and receives no interest on his over-payments.

Again, he charges the trustee with the whole of the fund of $12,000, from September 2d, 1869, six months from the date of the declaration of trust, while by far the greater part of it, at least, was not raised until the sales to Mrs. A. B. Gilmore, which took place in May and August, 1871. In support of this charge, it is urged that it has been adjudged that the trustee ought to have raised the $12,000 within six months from the date of the declaration of trust; but that is an error; it was not so adjudged. The trustee was, by the terms of the declaration, to raise that money by sale of the property only when it could be advantageously made, and it does not appear that it could have been so made before the sales to Mrs. A. B. Gilmore.

The account should be so stated as to show annual balances, and interest should be charged and allowed on such balances.

The fourth exception is in reference to the valuation fixed by the master on the land sold to Mrs. A. B. Gilmore. His valuation is clearly in accordance with the weight of the testimony. Those sales themselves, and the other sales, both pre-

vious and subsequent, made by the trustee, are strongly confirmatory of the justice of the master's estimate.

The sixth exception is to that part of the report which is adverse to the claim of the trustee for allowance in respect to money paid to Langdon H. Gilmore.

By the order, the master was directed to ascertain to what time the complainant Mrs. A. L. Gilmore has received from the trust the allowance for support of her children. Her husband was bound to furnish the allowance, and in default thereof, it was to be paid out of the proceeds of sales of land remaining after the fund of $12,000 had been raised. Mr. Gilmore appeared to have paid the allowance for a considerable period of time. So long as he paid it, the land chargeable with it in case of his default, was of course exempt. And the share of each of the children in that land was not chargeable with it after the child attained to majority. In this aspect it is important that the master should report as directed by the order. Langdon H. Gilmore, one of the children, received from the trustee, February 28th, 1874, $3,784.42, on account of his share of the proceeds of the sale of that land. He was then past his majority.

The first, second, third, fifth and sixth exceptions are allowed, and the fourth is overruled. The report will be referred back to the master.